UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEDRICK C. JENKINS,<br><br>Defendant. | CRIM. NO. 5:20-CR-112-KKC-EBA<br><br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on the motion by defendant Sedrick C. Jenkins (DE 44) to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The magistrate judge conducted a hearing on the motion and recommends that the Court grant it. (DE 81, Recommendation.) The United States has filed objections (DE 82) to the recommendation, and Jenkins has responded (DE 83) to the objections.

In March 2021, Jenkins pleaded guilty in this Court to possessing with intent to distribute at least 500 grams of methamphetamine and to possessing a firearm in furtherance of a drug-trafficking crime. (DE 30 Minutes.) In his plea agreement, Jenkins admitted to the following:

    a) On September 9, 2020, at approximately 10:30 a.m. marked patrol officers from the Lexington Police Department (LPD) initiated a traffic stop on a black Cadillac XTS4 passenger car, bearing West Virginia license plate 7pC 948. The LPD stop was initiated due to excessive window tinting and improper display of the license plate. The driver of the vehicle was a female and the front seat passenger was later identified as the Defendant. An LPD Officer approached

1

    the vehicle and shortly after the initial stop, he returned to his marked police vehicle to further investigate. Thereafter, the Defendant exited from the front passenger seat and fled from the vehicle. Additional investigators arriving at the scene gave chase and were able to place the Defendant into custody for fleeing from the vehicle.

b) A Kentucky State Police (KSP) narcotics detection canine was presented to the vehicle. The canine provided a positive alert to the odor of narcotics emitting from within the vehicle. Acting on the canine alert, the vehicle was searched for contraband. A Springfield 9mm handgun (Ser# BY138664) was located behind the driver seat within immediate reach of Jenkins who was the right front passenger. The firearm was strategically located so it was quickly and easily available for use. The United States can prove that the firearm was possessed to advance or promote the crime charged in Count 1 and that the firearm is readily capable of discharging a projectile by means of an action or explosion. Officers also located a black safe in the trunk of the vehicle that was found to contain approximately 8 pounds of methamphetamine. A KSP Trooper conducted a field test utilizing TruNarc (field test unit) on one of the eight (approximate 1 pound) brown packages. The substance tested positive for the presence of methamphetamine.

c) The driver of the vehicle stated that she had been contacted by the Defendant that morning who asked to get breakfast. The Defendant [told] her that he was staying at the Hyatt Place Hotel in Lexington and agreed to pick her up. She stated that the Defendant arrived at her residence operating the black Cadillac passenger car. The Defendant advised her that the Cadillac belonged to his family and that it was clean. After getting picked up, the Defendant drove to Wild Eggs Restaurant located in Palomar Shopping Center also in Lexington. Following breakfast, the Defendant drove to a gas station where she became the driver and the Defendant became the front seat passenger. The vehicle had turned onto Man O War Boulevard traveling towards Versailles Road when LPD officers conducted the vehicle stop shortly thereafter.

d) DEA Special Agents provided an administrative subpoena to the Hyatt Place Hotel. The hotel staff provided a receipt showing that "Rex" Jenkins had arrived at the hotel at 7:30am on September 9, 2020 and rented room 414. The room was rented for one night and paid for in cash for $120.00. Rex Jenkins is an alias for the Defendant.

e) In a post arrest statement, the Defendant admitted the items in the vehicle were his and the driver had nothing to do with it.

f) The suspected methamphetamine was sent to the DEA lab and tested positive for methamphetamine, a Schedule II Controlled Substance with a weight of at least 3554 grams (3.554 kilograms) with a 98 % purity. This amount and this purity are consistent with distribution as opposed to personal use.

(DE 31, Plea Agreement 2-3.)

By judgment dated July 22, 2021 (DE 40), the Court sentenced Jenkins to 168 months on the drug charge and 60 months on the gun charge to run consecutive for a total prison term of 228 months. Jenkins did not appeal.

In his § 2255 motion, Jenkins asserts that his court-appointed trial counsel Doreen Thompson was ineffective in three ways: 1) she failed to file a motion to suppress the "illegal search and seizure"; 2) she failed to file a notice of appeal after he asked her to; and 3) she allowed him to plead guilty or coerced him into doing so even though the government would not be able to prove that he was using the gun in furtherance of a drug-trafficking offense or that he was engaged in drug trafficking. (DE 68 Tr. 4.)

To prevail on an ineffective assistance of counsel claim, Jenkins bears the burden of showing that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 689). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To prove prejudice, a defendant "must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of [the proceeding] would have been different.'" *Dado*, 759 F.3d at 563 (quoting *Strickland*, 466 U.S. at 694). "When determining prejudice, [a court] must consider the errors of counsel in total, against the totality of the evidence in the case." *United States v. Munoz*, 605 F.3d 359, 377 (6th Cir. 2010) (quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006)). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Dado*, 759 F.3d at 563 (quoting *Strickland*, 466 U.S. at 694). Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691).

Where the defendant pleaded guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**Claim 1: Trial counsel's failure to file a motion to suppress**

In his § 2255 motion, Jenkins challenged what he called the "illegal search and seizure." (DE 44 Motion 5.) In the motion, he did not discuss his seizure though, stating he wanted trial counsel "to challenge the search of the vehicle." Thus, in its response to Jenkins' § 2255 motion, the United States addressed that issue. It submitted an affidavit by Jenkins' trial counsel Thompson (DE 56-1 Aff.) stating that "Mr. Jenkins['] own behavior, based upon his belief that he 'though[t] he had a warrant out on him,' gave the officers on the scene probable cause to search his vehicle as he fled the scene while being advised to put his hands up and exit the vehicle."

4

As Judge Atkins explained in his order setting the evidentiary hearing, "Where a petitioner claims that counsel was ineffective for not moving to suppress evidence tainted by a Fourth Amendment violation, the court must determine whether a Fourth Amendment violation occurred." (DE 58 Recommendation 3.) The Sixth Circuit has stated the same. "Where defense counsel's 'failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

At the hearing, Jenkins' counsel called only Jenkins as a witness. The United States called only Jenkins' trial counsel Thompson.

Thompson explained why she did not challenge the traffic stop. She explained that she investigated both the tint on the vehicle and the obstruction of the license plate and did not uncover any facts upon which she could challenge the stop. (DE 68 Tr. 50-55.) She also testified that she felt the search of the car was valid because Jenkins ran from the car and then, upon his seizure, referred to drugs in the car, saying the drugs were his. (DE 68 Tr. 63-65.) Moreover, a K-9 provided a positive alert to the odor of narcotics in the vehicle. (DE 68 Tr. 70.)

At the hearing, neither counsel asked Thompson why she did not challenge Jenkins' arrest. No law enforcement officer testified. Accordingly, the Court has no information regarding the cause for the arrest.

In post-hearing briefs, Jenkins did not challenge the traffic stop or the search of the vehicle. Instead, he focused on his arrest for second degree fleeing/evading

5

police. Jenkins argued the arrest was unlawful because the government produced no evidence at the hearing that the officers had an "articulable reasonable suspicion" that he had committed a crime or that he caused or created a substantial risk of physical injury to another person as the Kentucky statute required for fleeing/evading second degree required at the time of Jenkins' arrest. *See* Ky. Rev. Stats. 520.100(1)(a). *See* KY LEGIS 174 (2024), 2024 Kentucky Laws Ch. 174 (HB 5). Thus, he argued that, if his trial counsel had filed a motion to suppress his post-arrest statement, this Court would have granted it because the statement was the fruit of the illegal arrest.

In its post-hearing response brief, the government did not address the arrest, instead focusing on the search of the car.

In his recommendation, Judge Atkins determined that "the United States has failed to prove that the officers had a reasonable articulable suspicion that Jenkins had committed a crime when he fled from the traffic stop." (DE 81 Recommendation 12.) Judge Atkins explained that the only information the officers had at the time of Jenkins' arrest was that the vehicle had excessive tint and the license plate was obstructed. Thus, the magistrate judge determined that, "there is a high likelihood that if a motion to suppress had been filed, the Court would have determined that the arrest was unlawful." Further, Judge Atkins determined that the Court would likely have determined that the confession was the result of the unlawful arrest and, thus, was inadmissible. Finally, Judge Atkins determined that, if the statement was suppressed, the "proceedings would have likely been different" because the government had presented no other evidence linking Jenkins to the drugs and firearm

6

in the car. On that basis Judge Atkins recommended that Jenkins' § 2255 motion be granted.

The United States objects to the recommendation. It disputes the magistrate judge's determination that there is a high likelihood that the Court would have determined that the arrest was unlawful. It argues that "law enforcement testimony on a suppression matter would have likely altered the recommendation of the Magistrate." (DE 82 Obj. 1.) It asks the Court to schedule another evidentiary hearing.

In Jenkins' response to the United States' objections, he argues that the United States has forfeited or waived its right to present evidence regarding whether the officers had probable cause to arrest him for any crime. He cites no case law indicating that, in a § 2255 case, the district court is prohibited from conducting an evidentiary hearing after the magistrate judge has conducted one. Nor has this Court located any such case.

Here, Jenkins clarified after the hearing his argument as to his trial counsel's failure to file a motion to suppress. In post-hearing briefs, he argued that his counsel should have moved to suppress his post-arrest statement as the product of an unlawful arrest. Jenkins argued that the officers did not have probable cause to arrest him for fleeing/evading second-degree, which was the crime he was charged with. An arrest is constitutional, however, so long as there is probable cause to arrest the person "for some crime, even if the crime for which there is probable cause is different from the stated crime of arrest." *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004).

The evidentiary hearing was not focused on that issue. Accordingly, the Court will conduct another evidentiary hearing. The Court's purpose in this hearing is to determine 1) whether the officers had probable cause to arrest Jenkins for any crime

at the time they arrested him; 2) the circumstances of Jenkins' post-arrest statement; and 3) whether any evidence, other than Jenkins' statement, links him to the drugs and firearm found in the car.

### Claim 2: Trial counsel's failure to file a notice of appeal

Judge Atkins determined that the evidence showed that Thompson advised Jenkins of the right to appeal, but neither Jenkins nor his family instructed Thompson to appeal. Jenkins does not object to this conclusion. Moreover, the evidence supports it.

In his motion, Jenkins asserted that he requested that Thompson file an appeal "right after" the sentencing hearing. (DE 44 Motion 6.) At the evidentiary hearing, however, Jenkins testified that he did not talk with Thompson about appealing after the sentencing hearing. (DE 68 Tr. 18.) Instead, he testified that, sometime after the sentencing he "tried to get [ his] father to contact" Thompson (DE 68 Tr. 18, 19, 43.) He testified that his father and Thompson "had good conversations as far as . . . what was going on in the situation." (DE 68 Tr. 19.) He never testified, however, that his father instructed Thompson to file an appeal.

In Thompson's affidavit attached to the government's response to Jenkins' § 2255 motion, she attached "her standard appeal letter," which she stated she sent Jenkins on July 27, 2021. (DE 56-1 Aff.) The letter stated in bold, "If you wish to appeal this matter, you will need to advise me within ten days of the date of the entry of the judgment, or by July 31, 2021. <u>If you do wish to appeal, I have to file a Notice by August 4, 2021</u>. If I don't hear from you by then I will assume you do not wish to appeal this matter." (DE 56-2, Appeal Letter.)

In her affidavit, Thompson denied that Jenkins ever indicated he wanted to file an appeal. She testified that Jenkins never told her that he wanted to appeal. (DE

8

68 Tr. 49.) She testified that no member of Jenkins' family ever asked her to file a notice of appeal. (DE 68 Tr. 50.) There is no evidence to the contrary.

### Claim 3: Trial counsel's representation during plea negotiations.

In his motion, Jenkins asserts that Thompson ineffectively represented him in plea negotiations. The basis for this claim is not clear to the Court. In his motion, Jenkins indicated that Thompson allowed him to plead guilty even though the government could not prove he was "involved in drug trafficking or 'active employment' of a weapon." (DE 44 Motion 8.) Judge Atkins determined that, with this argument, "Jenkins effectively argues that he did not enter his plea voluntarily by way of ineffective assistance of counsel." The magistrate judge concluded that the evidence indicated that Jackson was "aware of the terms of the plea agreement and discussed the agreement with Ms. Thompson multiple times." Accordingly, Judge Atkins determined this claim failed.

Jenkins does not object to this determination. Further, the Court agrees that the evidence shows Jenkins knowingly, intelligently and voluntarily waived his rights to a trial when he pleaded guilty.

Accordingly, the Court hereby ORDERS as follows:

1) The Court adopts the Magistrate Judge's recommendation as to the first and third claims for habeas relief asserted in Jenkins' § 2255 motion;

2) This matter is set for an Evidentiary Hearing on **Thursday, February 6, 2025 at 10:00 a.m. at Lexington, Kentucky**, the purpose of which is to determine 1) whether the officers had probable cause to arrest Jenkins for any crime on September 9, 2020; 2) the circumstances surrounding his post-

arrest statement; and 3) whether any evidence, other than Jenkins' statement, links him to the drugs and firearm found in the car;

3) Christy J. Love remains appointed as counsel for Jenkins for purposes of this § 2255 motion; and

4) The United States Marshals Service is DIRECTED to transport Jenkins to Lexington, Kentucky by January 27, 2025.

This 31st day of October, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY